IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | | |
|---|---|---|---|
| ROBERT L. PASCO, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | Civil Action No. 5:11cv00087 | |
| v. | ) | | |
| | ) | | |
| HANK ZIMMERMAN, et al., | ) | By: | Michael F. Urbanski |
| | ) | | United States District Judge |
| Defendants. | ) | | |

## MEMORANDUM OPINION

Before the court are four **Motions to Dismiss (Dkt. #s 4, 8, 10, and 12)** filed by defendants in the above-captioned matter, in which defendants seek to dismiss claims brought by plaintiff Robert L. Pasco. This matter has been fully briefed, and the court heard oral argument on February 7, 2012. As detailed below, the federal civil rights claim asserted in this case arises out of an argument and scuffle between two employees of the Shenandoah County Library ("the Library"). During the fray, two computer hard drives were snatched from Pasco's desk and thrown to the ground, damaging them and giving rise to Pasco's claim of unconstitutional seizure in violation of the Fourth, Fifth and Fourteenth Amendments. As there can be no plausible claim that this interpersonal tantrum was motivated by state action, the federal claim asserted must be dismissed. In so concluding, the court is mindful of "the constitutional shoals that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law." Paul v. Davis, 424 U.S. 693, 701 (1976) (quoting Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971)). While the facts of this case may well support a number of state law claims, it is not actionable under federal law.

# I

This is a suit brought by Pasco, the former Director of the Library, against four defendants: (1) James Dallas Moore, a technology director of the Library and Pasco's subordinate; (2) Hank Zimmerman, the Chairman of the Library's Board of Trustees ("the Board"), in his individual and official capacities; (3) the Library; and (4) the Board. Pasco asserts the following causes of action: (1) violation of § 1983; (2) conversion; (3) violation of the Virginia Computer Crimes Act ("VCCA"), Va. Code Ann. § 18.2-152.1 et seq.; (4) assault and battery; (5) violation of Article 1, § 11 of the Virginia Constitution; and (6) wrongful discharge in violation of public policy, based on the VCCA, Virginia's Crime Victim and Witness Rights Act ("VCVWRA"), Va. Code Ann. § 19.2-11.01 et seq., and Article 1, § 11 of the Virginia Constitution. Pasco seeks compensatory damages, as well as punitive damages against Moore and Zimmerman. The court has federal question jurisdiction over Pasco's § 1983 claim, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over his state law claims, pursuant to 28 U.S.C. § 1367.[1] All four defendants have filed motions to dismiss, arguing that Pasco has failed to state a plausible federal claim.

### A. Factual Summary

Pasco served as Director of the Library from January 1, 2002, until he was terminated on October 12, 2010. On the morning of October 1, 2010, a dispute arose between Pasco and Moore regarding another Library employee, Keith Brown. Pasco alleges that Moore had taken an "unnatural interest" in Brown during the summer of 2010. Brown had complained about Moore's continuing interest and involvement in his life and employment at the Library. On the

---

[1] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction is discretionary, and a district court may decline to exercise this jurisdiction if it "has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(2).

2

morning of October 1, 2010, Moore was late for work, which Pasco alleges was a common occurrence, and, as his supervisor, Pasco reprimanded Moore for his tardiness. Later that morning, Moore came to Pasco's office and inquired about Brown's arrival time that morning, and Pasco responded that it was not Moore's concern. Moore returned to Pasco's office a second time, and Pasco alleges that he barged into the office, pushed Pasco back from his computer, and seized two external computer hard drives that were on Pasco's desk. One hard drive belonged to the Library, and the other was Pasco's personal hard drive. The complaint alleges that Moore attempted to leave Pasco's office with the computer hard drives with the intention of seizing them and taking them to the Shenandoah County Administrator.[2] In response, Pasco got up from his desk and attempted to retrieve the hard drives before Moore could leave the office with them. At this point a physical altercation ensued, and Moore threw the hard drives on the floor, shattering them.

After the scuffle in Pasco's office, Moore announced that he had been assaulted by Pasco and that he was going to file a complaint with the police. At some point that day Zimmerman found out that Moore was going to file, or had filed, a criminal complaint against Pasco, but Pasco alleges that Zimmerman never shared this information with him. Instead, Zimmerman asked Pasco not to file a criminal complaint against Moore and suggested that Pasco wait until after he returned from a scheduled conference in Colorado to mediate the differences between he and Moore and to make a decision about Moore's employment. The next day, October 2, 2010, a Sheriff's deputy came to Pasco's house and advised Pasco that Moore had made a complaint against him for assault and battery. The officer allegedly told Pasco that the complaint was without merit and that Pasco should take out a "no trespass" order against Moore due to his

---

[2] The complaint alleges that Moore later told Zimmerman that he took the hard drives in an effort to use information on them to get Pasco fired.

3

Case 5:11-cv-00087-MFU  Document 34  Filed 08/17/12  Page 3 of 19  Pageid#: 383

bizarre behavior. Because of Moore's behavior and allegedly false statements to law enforcement, Pasco terminated Moore and told Zimmerman that he had done so. Moore subsequently submitted a grievance seeking reinstatement to his job, but he did not appear at the grievance hearing on October 7, 2010. Accordingly, Pasco denied the grievance.

After the grievance hearing, Zimmerman asked Pasco to resign. Pasco refused because he felt that he had done nothing wrong in attempting to protect his and the Library's property from Moore. On October 12, 2010, the Board met at the home of one of its members and voted to terminate Pasco's employment. The Board notified Pasco by telephone of his termination. Pasco alleges that, even before the October 7, 2010, grievance hearing, Zimmerman had obtained commitments from the other members of the Board to terminate Pasco's employment, despite knowing that Moore had assaulted Pasco and that Moore had illegally seized and destroyed Pasco and the Library's property. After terminating Pasco's employment, the Board subsequently reinstated Moore to his job, and Pasco claims that by doing so, Zimmerman, the Library, and the Board adopted, ratified and acquiesced in Moore's illegal conduct.

In Count One, Pasco claims that all four defendants violated his Fourth, Fifth and Fourteenth Amendment rights, made actionable under § 1983, by unreasonably searching and seizing his property without due process of law. In Count Two, Pasco alleges that all four defendants converted his property by destroying his hard drives. In Count Three, Pasco alleges that all four defendants violated the VCCA by unlawfully engaging in computer trespass and permanently disabling and destroying the hard drives. In Count Four, Pasco alleges that Moore committed assault and battery and the other three defendants adopted, ratified and acquiesced in Moore's conduct. In Count Five, Pasco alleges that all four defendants violated Article 1, § 11 of the Virginia Constitution by terminating him and thus depriving him of property without due

4

process of law. Finally, in Count Six, Pasco alleges that defendants Zimmerman, the Library and the Board wrongfully discharged him in violation of Virginia's public policy. On February 7, 2012, Pasco filed a notice of voluntary dismissal (Dkt. # 30), dismissing without prejudice Counts Two, Three, and Four against Zimmerman. Accordingly, Pasco alleges violations by Moore in Counts One through Five; violations by Zimmerman in Counts One, Five, and Six; and violations by the Library and the Board in all six counts of the complaint.

**B. Motions to Dismiss**

In his motion to dismiss (Dkt. # 4), Moore argues that Pasco's complaint fails to state a claim under § 1983 because the acts alleged in the complaint that are attributable to Moore are descriptive of private conduct, based on a personal dispute between an employee and supervisor over perceived favorable treatment given by the supervisor to another employee. A claim under § 1983 requires the violation of a constitutional or statutory right by someone acting under color of state law. A private tort, such as that allegedly committed by Moore in this case, is not committed under color of state law simply because the tortfeasor is an employee of the state. Because Pasco has not alleged a federal cause of action, Moore argues that there is no reason for the court to retain jurisdiction over Pasco's state law claims and that those claims should be dismissed.

In his motion to dismiss (Dkt. # 8), Zimmerman argues that Pasco's § 1983 claim fails to state an actionable claim against Zimmerman, in either his official or individual capacity. A claim against Zimmerman in his official capacity is inappropriate in this case because the real party in interest, the Board, is already a named defendant. Only the Board, not Zimmerman in his official capacity, can provide Pasco with relief for the compensatory, declaratory, equitable, and monetary relief demanded. Additionally, a § 1983 claim against Zimmerman in his

5

individual capacity also fails.  To impose personal liability in a § 1983 action, Pasco must show that the official, acting under color of state law, caused the deprivation of the federal right.  In this case, Pasco has not alleged any acts committed by Zimmerman that caused a deprivation of Pasco's federal rights.

The motions to dismiss (Dkt. #s 10 and 12) filed by the Library and the Board assert the same arguments and are virtually identical.  They argue that Pasco has failed to state a plausible claim for relief under § 1983 against them because in order to establish municipal liability under § 1983 for unconstitutional actions by a municipal employee below the policy-making level, Pasco must show that the violation of his constitutional rights resulted from a municipal policy or custom.  Pasco must prove the existence of an official policy or custom, that is fairly attributable to the municipality, and that proximately caused the underlying constitutional violation.  Pasco has failed to sufficiently allege these necessary elements because the complaint is devoid of any mention of or reference to an official policy or custom.  The Library and the Board also cannot be liable under § 1983 for any conduct attributable to them because there are no facts indicating that these defendants were deliberately indifferent to Moore's actions or that they were the moving force behind Moore's actions.

## II

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Id.  When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint

6

Case 5:11-cv-00087-MFU   Document 34   Filed 08/17/12   Page 6 of 19   Pageid#: 386

individual capacity also fails.  To impose personal liability in a § 1983 action, Pasco must show that the official, acting under color of state law, caused the deprivation of the federal right.  In this case, Pasco has not alleged any acts committed by Zimmerman that caused a deprivation of Pasco's federal rights.

The motions to dismiss (Dkt. #s 10 and 12) filed by the Library and the Board assert the same arguments and are virtually identical.  They argue that Pasco has failed to state a plausible claim for relief under § 1983 against them because in order to establish municipal liability under § 1983 for unconstitutional actions by a municipal employee below the policy-making level, Pasco must show that the violation of his constitutional rights resulted from a municipal policy or custom.  Pasco must prove the existence of an official policy or custom, that is fairly attributable to the municipality, and that proximately caused the underlying constitutional violation.  Pasco has failed to sufficiently allege these necessary elements because the complaint is devoid of any mention of or reference to an official policy or custom.  The Library and the Board also cannot be liable under § 1983 for any conduct attributable to them because there are no facts indicating that these defendants were deliberately indifferent to Moore's actions or that they were the moving force behind Moore's actions.

## II

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Id.  When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint

as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III

Because this matter is before the court on federal question jurisdiction over Pasco's § 1983 claim and supplemental jurisdiction over his corresponding state law claims, the court will first consider Pasco's § 1983 claim. In Count One, Pasco alleges that Moore, in his individual capacity, unlawfully seized two hard drives under color of state law. Pasco further alleges that Zimmerman, the Library and the Board, by terminating Pasco and reinstating Moore, adopted, ratified and acquiesced in Moore's illegal conduct.

**A. Moore**

Pasco alleges that Moore unlawfully seized the two hard drives under color of state law because Moore acted with the intent to take the hard drives to the Shenandoah County Administrator in an effort to get Pasco fired. "Section 1983 proscribes the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Hughes v. Halifax County School Bd., 855 F.2d 183, 186 (4th Cir. 1988) (internal quotations omitted). It provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

7

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The Supreme Court of the United States has held that in order to state a plausible claim for relief under § 1983, a plaintiff "must establish that . . . [he] w[as] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). Importantly, "[l]ike the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful . . . ." Id. at 50 (internal quotations omitted). However, "seemingly private behavior may be fairly treated as that of the State itself," in order to constitute "under color of state law" for § 1983 purposes, if there is a "close nexus between the State and the challenged action . . . ." Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n, 531 U.S. 288, 295 (2001) (internal quotations omitted). Determining whether an individual's actions are attributable to the state requires a "normative judgment" where "no one fact can function as a necessary condition . . . for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." Id. at 295-96.

The Supreme Court has recognized several instances where private acts may be attributable to the State. One instance would be "where the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Mentavlos v. Anderson, 249 F.3d 301, 311 (4th Cir. 2001) (citing Sullivan, 526 U.S. at 52) (internal quotations omitted). The "required nexus may be present if the private entity has exercised powers that are traditionally the exclusive prerogative of the State." Id. (citing Blum v. Yaretsky, 457 U.S. 991, 1005 (1982)) (internal

8

quotations omitted). "[S]tate action has also been found . . . where the private actor operates as a willful participant in joint activity with the State or its agents . . . or when a nominally private entity . . . is controlled by an agency of the State . . . ." Id. (citing Brentwood Acad., 531 U.S. at 296) (internal quotations omitted). Finally, the Court has recognized state action "where a private entity is entwined with governmental policies or the government is entwined in the management or control of a private entity." Id. at 312.

While "cases deciding when private action might be deemed that of the State have not been a model of consistency, . . . the critical inquiry has remained constant. After examining the relevant facts and circumstances, the inquiry in each case is whether the conduct is fairly attributable to the [S]tate." Id. at 313 (internal quotations omitted). The Fourth Circuit Court of Appeals has defined "various tests or factors which may be considered [for this state action analysis]." Id. For instance, private action may be attributable to the State in the following circumstances:

> "(1) when the [S]tate has coerced the private actor to commit an act that would be unconstitutional if done by the [S]tate; (2) when the [S]tate has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the [S]tate has delegated a traditionally and exclusively public function to a private actor; or (4) when the [S]tate has committed an unconstitutional act in the course of enforcing a right of a private citizen."

Id. at 313 (quoting Andrews v. Fed. Home Loan Bank, 998 F.2d 214, 217 (4th Cir. 1993)).

Several considerations are important to this inquiry:

> (1) "whether the injury caused is aggravated in a unique way by the incidents of governmental authority"; (2) "the extent and nature of public assistance and public benefits accorded the private entity"; (3) "the extent and nature of governmental regulation over the institution"; and (4) "how the [S]tate itself views the entity, *i.e.*, whether the [S]tate itself regards the actor as a [S]tate actor."

Id. (quoting Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 343 (4th Cir. 2000)).

9

In Hughes v. Halifax County School Board, a former school employee filed a § 1983 claim alleging that his co-workers had "assaulted, battered, and subjected [him] to intentional emotional distress under color of state law . . . ." 855 F.2d at 186. Hughes and his co-workers were maintenance workers for the county school board. Id. at 184. During work hours, two of Hughes' co-workers teased him and conducted a "mock hanging" of him. Id. Hughes complained to his supervisor, who in turn reported the incident to the superintendent of the school board. Id. The superintendant instructed Hughes' supervisor to fire Hughes and the two co-workers involved in the incident. Id. Hughes subsequently filed suit against his co-workers, his supervisor, and the school board. Id. After the trial court issued directed verdicts in favor of the defendants, Hughes appealed to the Fourth Circuit. Id. Hughes claimed his co-workers acted under color of state law because "he was accosted by county employees with retaliation in their eyes,[3] on county land, with a county-owned rope, during work hours." Id. at 186. The Fourth Circuit disagreed, finding that Hughes' co-workers were not acting under color of state law because they were not "purporting to act under the authority vested in them by the state, [n]or were [their actions] otherwise made possible because of the privileges of their employment." Id. at 186-87. The Fourth Circuit further emphasized that "if the actions of [Hughes' co-workers] amount to state action, any employee of any state who commits a tort has potentially violated § 1983. We cannot endorse such a result." Id. at 187.

In Givens v. O'Quinn, 447 F. Supp. 2d 593 (W.D. Va. 2006), a state correctional officer succeeded in proving that his co-workers' actions were under color of state law for purposes of § 1983. Id. at 595. The officer claimed he was assaulted by his co-workers during a "practical joke gone awry." Id. The assault occurred at the correctional facility while the officer and his

---

[3] Hughes claimed that he was teased because of his participation in a grand jury investigation of the school board, specifically regarding "thefts suffered by the maintenance department in particular." Hughes, 855 F.2d at 184. His co-workers apparently teased him about this and said "'Let's hang him for it.'" Id.

10

co-workers were in uniform and working a night shift. Id. at 596. The co-workers restrained the officer, "bound him with handcuffs and leg irons, pulled down his pants, taped his genitalia to his leg, and took pictures of him." Id. The officer filed a § 1983 suit against his co-workers, the supervisor on duty the night of the assault, and other supervisors in the chain of command, and the jury returned a verdict in his favor against the co-workers and the on-duty supervisor. Id. These defendants subsequently filed motions for judgment as a matter of law, but the court upheld the jury verdict, finding that there was sufficient evidence to support liability under § 1983. Id. at 596-97. The court noted that although the fact that the co-workers and on-duty supervisor "were all on duty and in uniform at the time of the assault may be insufficient to show state action, additional evidence tips the balance in the [officer's] favor." Id. at 597. Key evidence presented at trial indicated that the on-duty supervisor was aware of the co-workers' planned assault and was responsible for locking a secured door through which the officer tried to escape after being seized by his co-workers. Id. at 598. The court found that "[i]t is undisputed that, had the door opened, [the officer] could have escaped the entire incident." Id. Thus, by abusing the authority conferred upon him by virtue of his official position, [the on-duty supervisor] allowed [the co-workers] to carry out their scheme." Id. Accordingly, the court held that the officer "successfully established the requisite nexus" between the state and the assault in order to hold the co-workers and on-duty supervisor liable under § 1983. Id. at 599.

Pasco alleges that Moore unlawfully seized and smashed two hard drives under color of state law in an effort to give information on the hard drives to the Shenandoah County Administrator to hopefully get Pasco fired. There is nothing in the complaint indicating that a supervisor gave Moore any authority, or directed him, to seize the hard drives. In fact, there is nothing in the complaint indicating that any member of the Board or any other employee of the

11

Library was aware of Moore's actions, or his intent, until after the incident. Nothing suggests that the state provided "significant encouragement," was a "willful participant," or that the state or state policies were entwined with or controlled Moore's actions. See Mentavlos, 249 F.3d at 311-12. Instead, the complaint specifically states that Moore's attempted seizure was "unauthorized" and that "Moore had no valid reason or authority to seize the computer hard-drives." Complaint, Dkt. # 1, p. 5-6, ¶¶ 20, 22. The complaint also states that "[n]o employees were allowed access to [Pasco's] office or computer files maintained by [Pasco] in his office. Moore had no authorization to access [Pasco's] computer or his back-up files." Id. at p. 5, ¶ 18. Furthermore, at oral argument, Pasco's counsel stated that Moore had no authority to seize the hard drives. The complaint fails to allege any state assistance to Moore, that Moore is regarded as a state actor by the state, or that Pasco's injury was aggravated in any way by a governmental authority. See Mentavlos, 249 F.3d at 313.

As in Hughes and Givens, the altercation between Moore and Pasco occurred at the Library during work hours and involved county employees and county property, but the complaint fails to allege that Moore's conduct was state action, as opposed to his personal conduct. There is no suggestion in the complaint that Moore's conduct arose out of his official duties as technology director for the Library. Rather, the complaint alleges a personal confrontation between Moore and Pasco arising out of a disagreement over Moore's "unnatural interest" in another employee, Brown. Further, there is no allegation that Moore, as was the case in Givens, acted with the authority or consent of any supervisor when he grabbed the hard drives. This is exactly the type of situation the Fourth Circuit had in mind in Hughes when it stated "if the actions of [Hughes' co-workers] amount to state action, any employee of any state who commits a tort has potentially violated § 1983. We cannot endorse such a result." 855 F.2d at

12

187. Simply put, Moore was not "clothed with the authority of state law." Id. at 186 (internal quotations omitted). While Moore may have committed a tort, he acted without any state authority or approval, express or implied, and did not act under color of state law. Instead, the incident arose out of a purely personal dispute, which does not give rise to § 1983 liability. The mere fact that Moore was an employee of the Library does not change the entirely private nature of his encounter with Pasco and cannot transform his unauthorized conduct of grabbing and smashing the hard drives into governmental action. To conclude otherwise would impermissibly change the fundamental character of the Bill of Rights from a "shield that protects private citizens from the excesses of government" into a "sword that they may use to impose liability upon one another." See Holly v. Scott, 434 F.3d 287, 291-92 (4th Cir. 2006).

Consistent with § 1983's requirement of state action, the underlying constitutional violation asserted here – unlawful seizure under the Fourth Amendment – has no application to private actors.

> The Fourth Amendment protects against unreasonable searches and seizures by Government officials and those private individuals acting as "instrument[s] or agents[s]" of the Government. See U.S. Const. amend. IV; Coolidge v. New Hampshire, 403 U.S. 443, 487 . . . (1971). It does not provide protection against searches by private individuals acting in a private capacity. See United States v. Jacobsen, 466 U.S. 109, 113 . . . (1984) (holding that the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official". . .).

United States v. Jarrett, 338 F.3d 339, 344 (4th Cir. 2003). Likewise, in order for a taking to violate the Fifth Amendment, the taking must be at the hands of the government. As the Fourth Circuit recently noted in Shirvinski v. U.S. Coast Guard, 673 F.3d 308 (4th Cir. 2012), "'[o]ur Constitution deals with the large concerns of the governors and the governed.' It does not 'purport to supplant traditional tort law in laying down rules of conduct to regulate liability for

13

injuries that attend living together in society.' Appellant's claim for relief is more appropriately the subject of common law remedies than constitutional guarantees." Id. at 316 (quoting Daniels v. Williams, 474 U.S. 327, 332 (1986)) (internal citation omitted).

### B. Zimmerman, the Library, and the Board

Pasco's § 1983 claim against the other three defendants alleges that Zimmerman, the Library and the Board violated his constitutional rights by adopting, ratifying and acquiescing in Moore's seizure and destruction of the hard drives by terminating Pasco and reinstating Moore.

In the leading case of Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local government units are included "among those persons to whom § 1983 applies." Id. at 690. Municipalities and local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. Municipal liability under § 1983 also applies to "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91. Customs and usages are included within the § 1983 analysis because even though "widespread discriminatory practices of state officials" may not be "authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom and usage' with the force of law." Id. at 691 (internal quotations omitted). Importantly, the Monell Court held that the language of § 1983 "compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. This means that "a municipality cannot be held liable

14

*solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. (emphasis in original). The Court concluded as follows:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Id. at 694.

In Spell v. McDaniel, 824 F.2d 1380 (1987), the Fourth Circuit expanded on the holding in Monell and provided further guidance on what is considered policy or custom for the purposes of municipal liability under § 1983. "While municipal 'policy' is found most obviously in municipal ordinances, regulations and the like which directly command or authorize constitutional violations, it may also be found in formal or informal *ad hoc* 'policy' choices or decisions by municipal officials authorized to make and implement municipal policy . . . ." Id. at 1385 (internal citations omitted). The court noted that "'[p]olicy' in this context implies most obviously and narrowly a course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." Id. at 1386 (internal quotations omitted). Additionally, "'policymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." Id. Moreover, "[w]hile 'finality' is a necessary attribute of 'policymaking authority,' . . . [t]he most critical factor is not the practical finality of an official's 'acts and edicts,' but their 'policy' nature." Id. Regarding the possibility of imposing municipal liability

15

under § 1983 based on custom or usage, the court adopted the Monell Court's definition of those terms. Id.

The Fourth Circuit in Spell further stated that "[b]ecause municipal liability results only when the municipality itself can be directly charged with fault for a constitutional violation, it results only when policy or custom . . . is (1) fairly attributable to the municipality as its 'own' and is (2) the 'moving force" behind the particular constitutional violation." Id. at 1386-87 (internal citation omitted). Policy is fairly attributable to a municipality "because (1) it is made directly by its lawmakers, i.e., its governing body, or (2) it is made by a municipal agency or official having final authority to establish and implement the relevant policy." Id. at 1387 (internal quotations and citations omitted). Custom and usage "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." Id.

A single act by a municipality can constitute a policy or custom for purposes of municipal liability under § 1983. "[A] single act by a decisionmaker with final authority in the relevant area" can constitute a "policy" attributable to the municipality itself, but "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). This means that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. "At

16

the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

There is no such link in this case. Indeed, this case presents no hint of a policy officially adopted or promulgated by Zimmerman, the Library or the Board authorizing, ratifying or approving of the seizure and destruction of Pasco's property. Nor is there any suggestion that there was any custom, usage or practice by Zimmerman, the Library or the Board endorsing the taking of his property. It simply cannot be plausibly asserted that there was any action by Zimmerman, the Library or the Board that was the moving force behind Moore's abrupt conduct in grabbing and smashing the hard drives. See Spell, 824 F.2d at 1386-87. While a single act can constitute a policy or custom for the purposes of § 1983 liability, a "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404 (emphasis in original). Simply put, there is no plausible basis to assert that anything Zimmerman, the Library or the Board did was the moving force behind Moore's rash act of grabbing and smashing the hard drives.

Pasco's complaint rests on the threadbare conclusion that Zimmerman, the Library and the Board "adopted, ratified and acquiesced in Defendant Moore's illegal behavior" by terminating Pasco and reinstating Moore. Complaint, Dkt. #1, p. 8, ¶ 37. While the court must accept Pasco's factual allegations as true, that is not the case with legal conclusions. See Iqbal, 556 U.S. at 678. Although Moore's alleged conduct may state a claim for violation of state law, there is no discernable violation of federal law by Moore upon which to hold Zimmerman, the Library and the Board liable under § 1983. Acting privately, Moore cannot violate the Fourth, Fifth or Fourteenth Amendments. The Board's later decision to reinstate Moore and terminate Pasco does not transform Moore's unauthorized private act of snatching and throwing Pasco's

17

hard drives into a governmental one for the purposes of the Fourth, Fifth or Fourteenth Amendments. "[S]imple acquiescence by the Government does not suffice to transform a private search into a Government search. Rather there must be some evidence of Government participation in or affirmative encouragement of the private search before a court will hold it unconstitutional. Passive acceptance by the Government is not enough." Jarrett, 338 F.3d at 345-46. Viewed in the light most favorable to him, Pasco alleges no more than that. It is clear from Pasco's own complaint that the seizure and destruction of the hard drives that undergirds his § 1983 claim was an unauthorized act and was not motivated by, participated in or affirmatively encouraged by Zimmerman, the Library or the Board. See Complaint, Dkt. #1, p. 6, ¶ 22 ("Moore had no valid reason or authority to seize the computer hard-drives."). As such, there can be no Fourth, Fifth or Fourteenth Amendment violations, much less any § 1983 liability predicated thereon.

The allegations in this case are simply not of constitutional dimension giving rise to liability under § 1983. Two employees, Moore and Pasco, had an argument stemming from Moore's "unnatural interest" in a third employee. Tempers flared and Moore tried to make off with hard drives from Pasco's desk. When Pasco physically tried to stop Moore, the hard drives were thrown to the floor and damaged. There is no suggestion that Moore was authorized, or otherwise operated under color of state law, in seizing and smashing the hard drives. Indeed, the complaint alleges just the contrary, that the seizure was unauthorized. There is no allegation that any policy, custom or practice of the Library or the Board motivated Moore's conduct. While Pasco was later terminated by the Board, there is no allegation that in doing so, the Board adopted, ratified or condoned the destruction of Pasco's property by Moore. In short, while these circumstances certainly raise a number of plausible state law claims, there is no plausible claim

18

under § 1983, or the Fourth, Fifth or Fourteenth Amendments. As the Fourth Circuit recently confirmed in Shirvinski:

> The Supreme Court's consistent guidance in this area counsels against finding constitutional injury here. Since Paul v. Davis, 424 U.S. 693, 701 . . . (1976), the Court has repeatedly admonished judges to be wary of turning the Due Process Clause into "a font of tort law" by permitting plaintiffs to constitutionalize state tort claims through artful pleading. See e.g., Daniels v. Williams, 474 U.S. 327, 332 . . . (1986).

673 F.3d at 314. Consistent with this guidance, defendants' Motions to Dismiss Count One must be granted.

## IV

The dispute at the center of this case concerns issues of Virginia, and not federal, law. As Count One, the only claim giving rise to federal question jurisdiction has been dismissed, this dispute ought to be resolved in a Virginia state court. As such, the court declines to exercise its supplemental jurisdiction over the remaining state law claims.

Accordingly, **IT IS ORDERED** that defendants' **Motions to Dismiss (Dkt. #s 4, 8, 10, and 12)** are **GRANTED** and the federal § 1983 claim alleged in Count One of the complaint is **DISMISSED WITH PREJUDICE**. As the court declines to exercise its supplemental jurisdiction over the remaining state law claims, it is further **ORDERED** that the remainder of the case is **DISMISSED** for lack of federal jurisdiction and the case as a whole be **STRICKEN** from the active docket of the court.

Entered: August 17, 2012

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge